## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Brooks Barber, individually and on behalf of all similarly situated, Plaintiff, <br><br> v. <br><br> Bauer Hockey, LLC, Defendant. | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

### CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

Plaintiff, Brooks Barber, individually and on behalf of all others similarly situated, by his undersigned attorneys, alleges, upon personal knowledge as to himself and upon information and belief as to other matters, as follows:

### INTRODUCTION

1.      Defendant, Bauer Hockey, LLC ("Bauer"), is a worldwide company that designs, manufactures, markets, and sells hockey equipment.

2.      Bauer furloughed a number of its employees without pay, including Plaintiff, from on or about April 13, 2020 through on or about June 8, 2020 (the "Furlough Period").

3.      Bauer knew or should have known that furloughed employees were completing work for Bauer's benefit without compensation during the Furlough Period, in violation of the federal Fair Labor Standards Act ("FLSA") and New Hampshire law (N.H. R.SA. 275:43-b and N.H. R.S.A. § 279 *et seq*.).

4.      Bauer knew or should have known that furloughed employees were completing work for Bauer's benefit during the Furlough Period without compensation because, inter alia:

(a)     Non-furloughed Bauer managers and/or supervisory employees directed, prompted, or otherwise caused furloughed employees to complete work for Bauer's benefit during the Furlough Period;

(b)     Non-furloughed Bauer managers and/or supervisory employees were on notice that furloughed employees were receiving business-related communications, to which furloughed employees responded or coordinated with Bauer to respond, during the Furlough Period; and

(c)     Non-furloughed Bauer managers and/or supervisory employees arranged for and conducted Zoom meetings including furloughed employees during which business-related topics and strategies were discussed for Bauer's benefit during the Furlough Period.

5.     As discussed herein, Bauer repeatedly and willfully violated the FLSA and New Hampshire law by failing to compensate furloughed employees during the Furlough Period for work completed for Bauer's benefit.

6.     All employees furloughed by Bauer during the Furlough Period, including Plaintiff, have been subject to the same or a similar employment policy, practice, and/or procedure with respect to not being compensated by Bauer during the Furlough Period for work completed for Bauer's benefit.

7.     Plaintiff brings this action on behalf of himself and all similarly situated current and former Bauer employees who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*, and specifically, its collective action provision, 29 U.S.C. § 216(b), for unpaid minimum wages during the Furlough Period.

8.      Plaintiff also brings this action on behalf of himself and all similarly situated current and former Bauer employees, pursuant to Federal Rule of Civil Procedure 23 for unpaid salary and minimum wage, pursuant to N.H. R.S.A. § 275:43-b and N.H. R.S.A. § 279 *et seq.*

## **PARTIES**

9.      Plaintiff, Brooks Barber, is an adult individual who currently resides in and is a citizen of the Commonwealth of Pennsylvania.  During the Furlough Period, Plaintiff resided in and was a citizen of the State of New Jersey.

10.      At all times relevant, Plaintiff was an "employee" of Bauer as defined by the FLSA and New Hampshire law.

11.      Defendant, Bauer, is a New Hampshire corporation with a corporate headquarters located at 100 Domain Drive, Exeter, New Hampshire, 03833-2996, United States.

12.      At all times relevant, Bauer had substantial control over Plaintiff's and similarly situated employees' working conditions, terms of employment, and over the unlawful policy, practice, and/or procedure of failing to compensate furloughed employees for all work completed for Bauer's benefit during the Furlough Period, as alleged in greater detail herein.

13.      At all times relevant, Bauer was an "employer" of Plaintiff and similarly situated employees as defined by the FLSA and New Hampshire law.

14.      At all times relevant, Bauer has been an enterprise engaged in "the production of goods for commerce" within the meaning of that phrase as used in the FLSA.

15.      Upon information and belief, Bauer's gross revenue exceeds $500,000.00 per year.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this Action involves a federal question under the FLSA.

17.     This Court has supplemental jurisdiction over Plaintiff's New Hampshire claims arising pursuant to 28 U.S.C. § 1367(a).

18.     The claims brought under New Hampshire law are so closely related to the FLSA claim that they form part of the same case or controversy under Article III of the United States Constitution.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Bauer resides in, and regularly does business within, this District.

## FACTUAL ALLEGATIONS

20.     Plaintiff incorporates Paragraphs 1 through 19 hereof, as if fully set forth herein.

21.     At all times relevant, Bauer was engaged in the business of designing, manufacturing, marketing, and selling hockey equipment.

22.     Upon information and belief, at all times relevant, Bauer employed employees in the United States and Canada to facilitate business worldwide.

23.     Due to the purported impact of the COVID-19 pandemic on Bauer's business operations, Bauer furloughed a number of employees without pay, including Plaintiff, beginning on or about April 13, 2020.

24.     Bauer furloughed employees from on or about April 13, 2020 through on or about June 8, 2020 (again, the "Furlough Period").

25.     During the Furlough Period, Bauer continued business operations; Bauer's continued operations included its Elite Athlete Services Team ("EAS Team") and, upon information and belief, other Bauer divisions, departments, and/or teams.

26.     During the Furlough Period, Bauer furloughed at least six employees on the EAS Team, including Plaintiff and, upon information and belief, other Bauer employees in different divisions, departments, and/or teams; supervisory and/or managerial Bauer employees on the EAS Team and, upon information and belief, on other Bauer divisions, departments, and/or teams, were not furloughed.

27.     Bauer's EAS Team is responsible for working with professional National Hockey League ("NHL") and America Hockey League ("AHL") teams and athletes to market, sell, and promote Bauer's hockey equipment.

28.     Bauer assigns individual members of the EAS Team geographic territories, such that team members are responsible for working with the NHL and AHL teams and athletes within an assigned territory.

29.     NHL and AHL teams typically both have 23 athletes on their active rosters.

30.     Individual members of Bauer's EAS Team interact directly with athletes and team representatives, including inter alia, arranging for team equipment orders and entering into contractual relationships on behalf of Bauer with athletes.

31.     Individual members of Bauer's EAS Team serve as athletes' and team representatives' primary point of contact with Bauer.

32.     Upon information and belief, individual members of Bauer's EAS Team communicate with athletes and team representatives via email and in-person, but the majority of communications are via phone call and text message.

33.    Bauer employees furloughed, including Plaintiff, were restricted from using their Bauer email addresses and accessing Bauer electronic systems during the Furlough Period.

34.    Bauer continued to provide cell phone service for furloughed employees during the Furlough Period, at Bauer's expense.

35.    Upon information and belief, at or around the commencement of the Furlough Period, Bauer instructed furloughed employees to "back up" their business-related contacts on their cell phones for which Bauer paid.

36.    Upon information and belief, the purpose of Bauer continuing to provide furloughed employees with cell phone service during the Furlough Period and instructing furloughed employees to "back up" their business-related contacts was, inter alia, to:

(a)    Allow furloughed employees to facilitate, originate, and complete work for Bauer's benefit during the Furlough Period; and

(b)    Ensure that business-related communications to furloughed employees, including from NHL and AHL athletes and team representatives, were not left unaddressed during the Furlough Period.

37.    Plaintiff was, and the similarly situated employees Plaintiff seeks to represent were, furloughed by Bauer during the Furlough Period and not compensated for work completed for Bauer's benefit during the Furlough Period.

38.    Bauer knew or should have known that furloughed employees were completing work for Bauer's benefit during the Furlough Period for which they were legally entitled to compensation.

39.    In some instances, non-furloughed Bauer employees, including supervisory and/or managerial employees, instructed, directed, and/or prompted furloughed employees to complete

work during the Furlough Period for Bauer's benefit, for which furloughed employees were not compensated.

40.    Bauer has not maintained records of the actual time worked by furloughed employees during the Furlough Period.

41.    At all times relevant, Bauer willfully applied the same or a similar furlough policy, practice, and/or procedure to all furloughed employees during the Furlough Period, depriving them of earned compensation.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

42.    Plaintiff incorporates Paragraphs 1 through 41 hereof, as if fully set forth herein.

43.    In or about Summer 2016, Plaintiff began employment with Bauer.

44.    On or about February 25, 2017, Plaintiff signed a Confidentiality, Non-Competition and Non-Solicitation Agreement (the "Agreement") presented to him by Bauer.

45.    The Agreement contains no provisions related to Plaintiff's compensation or payment of wages.

46.    The Agreement includes twelve-month post-termination non-competition and non-solicitation provisions, and provides that Bauer will continue paying Plaintiff 50% of his final base salary for the length of the post-termination non-competition provision.

47.    At all times relevant, Plaintiff was employed by Bauer as a Marketing Representative on the EAS Team.

48.    As a Marketing Representative on Bauer's EAS Team, Plaintiff was responsible for working with NHL and AHL teams and athletes to market, sell, and promote Bauer's hockey equipment.

49.     Bauer assigned Plaintiff a geographic territory covering the following NHL and AHL teams, and the athletes on those teams: Carolina Hurricanes; Charlotte Checkers; Washington Capitals; Hershey Bears; Philadelphia Flyers; Lehigh Valley Phantoms; New Jersey Devils; Binghamton Devils; New York Islanders; Bridgeport Sound Tigers; New York Rangers; and Hartford Wolfpack.

50.     Plaintiff's geographic territory consisted of 12 professional hockey teams, with approximately 276 athletes on their active rosters.

51.     As a Marketing Representative on Bauer's EAS Team, Plaintiff interacted directly with athletes and team representatives, including inter alia, arranging for team equipment orders and entering contractual relationships on behalf of Bauer with athletes.

52.     Plaintiff served as NHL and AHL athletes' and team representatives' primary point of contact with Bauer.

53.     Plaintiff communicated with athletes and team representatives via email and in-person, but the majority of communications were via phone call and text message.

54.     Plaintiff was restricted from using his Bauer email addresses and accessing Bauer electronic systems during the Furlough Period.

55.     Bauer continued to provide cell phone service for Plaintiff during the Furlough Period, at Bauer's expense; Plaintiff's cell phone for which Bauer continued to provide service was Plaintiff's primary means of conducting business on behalf of Bauer.

56.     At or around the commencement of the Furlough Period, Bauer instructed furloughed Plaintiff to "back up" his business-related contacts on his cell phone.

57.    On or about April 8, 2020, Plaintiff received a letter from Bauer indicating that,

effective April 13, 2020, Bauer would be furloughing without pay a number of Bauer employees,

including Plaintiff.  A true and correct copy of this letter is attached as Exhibit 1.

58.    The April 8 letter stated: "While on furlough, you should not perform work for

[Bauer] and you will not be paid by [Bauer]."

59.    Despite the instruction that furloughed employees "should not perform work for

[Bauer]", Bauer knew or should have known that Plaintiff was completing work for Bauer's

benefit during the Furlough Period for which he was not compensated.

60.    During each week of the Furlough Period, Bauer knew or should have known that

Plaintiff completed work on Bauer's behalf.

61.    Non-furloughed Bauer employees, including supervisory and/or managerial

employees, instructed, directed, and/or prompted Plaintiff to complete work during the Furlough

Period for Bauer's benefit, for which Plaintiff was not compensated; Bauer possesses and/or

controls text messages illustrating as such.

62.    Upon information and belief, the work Plaintiff completed for Bauer's benefit

during each week of the Furlough Period was greater than de minimis and, inter alia, consisted

of: responding to and communicating with athletes and team representatives within Plaintiff's

assigned territory, and related follow-up communications; responding to and communicating

with non-furloughed employees of Bauer regarding business-related matters, and related follow-

up communications; and participation in Zoom meetings arranged by Bauer for the EAS Team,

including furloughed and non-furloughed members, wherein strategy related to the end of the

Furlough Period and the NHL's and AHL's return to play was discussed, and related follow-up

communications.  True and correct copies of images of a Zoom meeting invite is attached as Exhibit 2.

63.     Bauer has not maintained records of the actual time worked by Plaintiff during the Furlough Period.

64.     Plaintiff has within his possession documentation that illustrates time Plaintiff spent working for Bauer's benefit during the Furlough Period; however, documentation illustrating the full extent of time Plaintiff spent working for Bauer's benefit during the Furlough Period, including comprehensive records of text messages and phone calls, are within Bauer's control and otherwise unavailable to Plaintiff.

65.     On or about June 8, 2020, Plaintiff returned to work following the conclusion of the Furlough Period.

66.     Plaintiff's final day of employment with Bauer was on or about February 24, 2021; his final annual base salary was approximately $93,385.00, or a weekly rate of $1,795.87.

67.     On or about February 25, 2021, Bauer sent Plaintiff a letter discussing post-termination obligations under the Agreement.  A true and correct copy of this letter is attached as Exhibit 3.

68.     The February 25 letter reduced the non-competition provision from twelve to ten months, but did not reduce the twelve month post-termination non-solicitation provision; in light of the non-competition provision being reduced, Bauer reduced the period for which Plaintiff would receive 50% of his final base salary from twelve to ten months.

69.      Upon information and belief, Bauer knew that Plaintiff would not be able secure employment in the worldwide hockey industry for the entire twelve-month non-solicitation period, notwithstanding the reduction of the non-competition period to ten months, allowing

10

Bauer to enjoy the benefit of prohibiting Plaintiff from securing employment for twelve months, but only continuing his partial salary payments for ten.

## COLLECTIVE ACTION ALLEGATIONS

70.     Plaintiff incorporates Paragraphs 1 through 69 hereof, as if fully set forth herein.

71.     Plaintiff brings the first Cause of Action, a claim for minimum wages under the FLSA, on behalf of himself and all similarly situated persons who was a Bauer employee furloughed during the Furlough Period and did not receive minimum wage for all work completed for Bauer's benefit, and who elect to join this action pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective").

72.     Bauer failed to properly disclose to or apprise Plaintiff and the FLSA Collective of their rights under the FLSA with respect to the Furlough Period.

73.     The uncompensated work that Plaintiff and the FLSA Collective have performed during the Furlough Period was known, or should have been known, to Bauer.

74.     As part of its regular business practice, Bauer has intentionally, willfully, and repeatedly engaged in a policy, practice, and/or procedure of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy, practice, and/or procedure included, but was not limited to:

(a)     Willfully failing to pay Plaintiff and the FLSA Collective minimum wage for all work completed for Bauer's benefit during the Furlough Period; and

(b)     Willfully failing to record all of the time that Plaintiff and the FLSA Collective worked for Bauer's benefit during the Furlough Period.

75.     Bauer is aware or should have been aware that federal and state law required Bauer to pay Plaintiff and the FLSA Collective the minimum wage for all work completed for Bauer's benefit during the Furlough Period.

76.     Plaintiff and the FLSA Collective will essentially have analogous claims stemming from the policy, practice, and/or procedure described herein and such claims do not depend on the personal circumstances of particular aggrieved individuals.

77.     Bauer's conduct has been widespread, repeated, and consistent.

78.     Bauer is liable under the FLSA for, inter alia, failing to compensate Plaintiff and the members of the FLSA Collective for work completed for Bauer's benefit during the Furlough Period.

79.     Upon information and belief, the FLSA Collective consists of many similarly situated individuals who have not been properly compensated by Bauer during the Furlough Period in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit. Those similarly situated collective members are known to Bauer, are readily identifiable, and can be located through Bauer's records. Notice should be sent to the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## NEW HAMPSHIRE CLASS ACTION ALLEGATIONS

80.     Plaintiff incorporates Paragraphs 1 through 79 hereof, as if fully set forth herein.

81.     Plaintiff brings the second and third Cause of Actions, on behalf of himself and a class of persons who work or have worked for Bauer during the Furlough Period, who were not properly compensated during the Furlough Period for work completed for Bauer's benefit ("New Hampshire Class").

82.     Upon information and belief, the persons in the New Hampshire Class are so numerous that joinder of all members is impracticable.

83.     Although the precise number of such persons is unknown, the facts on which the calculation of that number depends are presently within the sole control of Bauer.

84.     Upon information and belief, the New Hampshire Class consists of at least 6 members.

85.     Bauer has acted or refused to act on grounds generally applicable to the New Hampshire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

86.     Common questions of law and fact exist as to the New Hampshire Class and predominate over any questions affecting only individual members, and include, but are not limited to, the following:

(a)     Whether Bauer failed to pay Plaintiff and the New Hampshire Class their full salary in all weeks during the Furlough Period where Plaintiff and the New Hampshire Class completed work for Bauer's benefit;

(b)     Whether Bauer failed to pay Plaintiff and the New Hampshire Class their minimum wage for all hours worked for Bauer's benefit during the Furlough Period;

(c)     Whether Bauer failed to keep true and accurate time records for all hours worked by Plaintiff and the New Hampshire Class; and

(d)     The nature and extent of class-wide injury and the measure of damages for those injuries.

87.     Plaintiff's claims are typical of the claims of the New Hampshire Class he seeks to represent. Plaintiff and the New Hampshire Class were furloughed by Bauer during the Furlough

Period, completed work for Bauer's benefit during the Furlough Period, and have not been compensated for work completed for Bauer's benefit during the Furlough Period. Plaintiff and the New Hampshire Class have all sustained similar types of damages as a result of Bauer's failure to comply with N.H. R.S.A. § 275:43-b and N.H. Rev. Stat. § 279 *et seq*.

88.    Plaintiff will fairly and adequately represent and protect the interests of the New Hampshire Class; Plaintiff has no interests which are antagonistic to the interests of the New Hampshire Class as a whole.

89.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class certification is superior because it will avoid duplicative litigation that might result in inconsistent judgments against Bauer.

90.    The members of the New Hampshire Class have been damaged and are entitled to recovery as a result of Bauer's common and uniform policy, practice, and/or procedure.

## COUNT ONE
### Fair Labor Standards Act – Unpaid Minimum Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

91.    Plaintiff incorporates Paragraphs 1 through 90 hereof, as if fully set forth herein.

92.    Bauer failed to pay Plaintiff and the FLSA Collective the minimum wage to which they are entitled under the FLSA.

93.    Bauer has engaged in a widespread policy, practice, and/or procedure of violating the FLSA with regard to furloughed employees during the Furlough Period, as detailed herein.

94.    At all times relevant, Plaintiff and the FLSA Collective were engaged in commerce and/or production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

95.     At all times relevant, Bauer has been an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

96.     At all times relevant, Plaintiff and the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

97.     Bauer was required to pay Plaintiff and the FLSA Collective the applicable minimum wage for all work performed for Bauer's benefit during the Furlough Period.

98.     As a result of Bauer's violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wage in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

99.     Bauer's unlawful conduct, as described herein has been intentional and willful. Bauer was aware or should have been aware that the policy, practice, and/or procedure described herein were unlawful. Bauer has not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective during the Furlough Period.

100.    Because Bauer's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

### COUNT TWO
### N.H. R.S.A. § 275:43-b – Unpaid Salary
### (Brought on behalf of Plaintiff and the New Hampshire Class)

101.    Plaintiff incorporates Paragraphs 1 through 100 hereof, as if fully set forth herein.

102.    Bauer failed to properly compensate Plaintiff and the New Hampshire Class their full salaries for any pay period, during the Furlough Period, in which Plaintiff and the New Hampshire Class performed any work for Bauer's benefit.

103.     At all times relevant, Bauer was an employer of Plaintiff and the New Hampshire Class as defined in N.H. R.S.A. § 275:42(I).

104.     At all times relevant, Plaintiff and the New Hampshire Class were employees as defined in N.H. R.S.A. § 275:42(II).

105.     By failing to compensate Plaintiff and the New Hampshire Class for their full salaries for any pay period, during the Furlough Period, in which Plaintiff and the New Hampshire Class performed any work, Bauer has violated N.H. R.S.A. § 275:43-b.

106.     In violating N.H. R.S.A. § 275:43-b, Bauer acted willfully, without good faith, and with reckless disregard for New Hampshire law.

107.     As a result of Bauer's failure to compensate Plaintiff and the New Hampshire Class during the Furlough Period, Plaintiff and the New Hampshire Class are entitled to their full salary for any pay period in which any work was performed for the benefit of Bauer without regard to the number of days or hours worked, in amounts to be determined at trial, liquidated damages, costs, reasonable attorneys' fees, and interest.

## COUNT THREE
### N.H. R.S.A. § 279 et seq – Unpaid Minimum Wage
### (Brought on behalf of Plaintiff and the New Hampshire Class)

108.     Plaintiff incorporates Paragraphs 1 through 107 hereof, as if fully set forth herein.

109.     Bauer failed to properly compensate Plaintiff and the New Hampshire Class minimum wage for work performed for Bauer's benefit during the Furlough Period.

110.     At all times relevant, Bauer was an employer of Plaintiff and the New Hampshire Class as defined in N.H. R.S.A. § 279:1(XI).

111.     At all times relevant, Plaintiff and the New Hampshire Class were employees as defined in N.H. R.S.A. § 279:1(X).

112.    By failing to compensate Plaintiff and the New Hampshire Class for their full salaries for any pay period, during the Furlough Period, in which Plaintiff and the New Hampshire Class performed any work, Bauer has violated N.H. R.S.A. § 279:21.

113.    In violating N.H. R.S.A. § 279:21, Bauer acted willfully, without good faith, and with reckless disregard for New Hampshire law.

114.    As a result of Bauer's failure to compensate Plaintiff and the New Hampshire Class during the Furlough Period, Plaintiff and the New Hampshire Class are entitled to minimum wage for all hours worked for Bauer's benefit during the Furlough Period, costs, reasonable attorneys' fees, and interest, per N.H. R.S.A. § 279:29.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests judgment as follows:

(a)    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to the members of the FLSA Collective (as defined above). Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied minimum wages for all hours worked during the Furlough Period (as defined above);

(b)    Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 201, et seq., and the supporting United States Department of Labor regulations;

(c)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(d)    Designation of Plaintiff as a Class Representative and counsel of record as Class Counsel for the New Hampshire Class (as defined above);

(e)    Issuance of a declaratory judgment that the policies, practices, and/or procedures described herein are unlawful under the FLSA and New Hampshire law;

(f)    An award of unpaid minimum wages and liquidated damages under the FLSA and New Hampshire law;

(g)     An award of unpaid salary and liquidated damages under the New Hampshire law;

(h)     An award of pre- and post-judgment interest;

(i)     An award of costs and expenses of this action, including reasonable attorneys' fees;

(j)     A reasonable incentive award for the lead Plaintiff to compensate him for the time he spent attempting to recover wages for Class Members and for the risks he took in doing so; and

(k)     Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.


Dated:  September 2, 2021                    Respectfully submitted,

BROOKS BARBER

By and through his Attorneys,
DEVINE, MILLIMET & BRANCH, P.A.

/s/ *Marrielle B. Van Rossum*
Pierre A. Chabot, #17606
Marrielle Van Rossum, #268100
111 Amherst Street
Manchester, NH 03101
pchabot@devinemillimet.com
mvanrossum@devinemillimet.com

and

CLARK HILL PLC

/s/ Andrew J. Ruxton
Brandon J. Verdream, Pa. I.D. No. 204162
Andrew J. Ruxton, Pa. I.D. 322818
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA  15219
Telephone:  (412) 394-2332
Facsimile:  (412) 394-2555

*Pro hac vice admission to be sought