```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE
```

Brooks Barber

    v.                                            Case No. 21-cv-742-SE
                                                         Opinion No. 2022 DNH 129

Bauer Hockey, LLC


O R D E R

Brooks Barber filed a putative collective action on behalf of himself and similarly situated employees and former employees of Bauer Hockey, LLC ("Bauer"), alleging violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and New Hampshire state law. Barber seeks conditional certification of a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA.[1] Doc. no. 18. Bauer objects. Because Barber has met his burden to show that the proposed members of the collective are similarly

---

[1] In the introduction to his motion for conditional certification, Barber states that he seeks certification of a collective of himself "and similarly situated former employees" who worked without pay during the relevant furlough period. Doc. no. 18 at 1. Barber clarified in his reply that he seeks a collective that includes similarly situated current and former Bauer employees who worked without pay during the furlough period. Doc. no. 21 at 1 n.1 As discussed herein, Barber's proposed definition of the collective is not limited to former employees, and Bauer's objection interprets Barber's proposed collective to include both current and former Bauer employees. See doc. no. 20-1 at 20-21.

situated enough to receive notice of this action, the court grants Barber's motion.[2]

Standard of Review

The FLSA provides that an employer who violates provisions of the Act is liable to its employee or employees for their unpaid minimum wages or overtime compensation, along with other relief. § 216(b). An employee may bring an action on behalf of himself "and other employees similarly situated." Id. Employees who want to be party plaintiffs may join in a collective action to enforce their rights under the FLSA. Id.; Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 448 (2016); Clark v. Capital Vision Servs., LLC, No. 22-cv-10236-DJC, 2022 WL 2905356, at *1 (D. Mass. July 22, 2022). Unlike class actions under Federal Rule of Civil Procedure 23, FLSA collective actions require similarly situated employees to opt in rather than opt out of the action. Tyson Foods, 577 U.S. at 449; Clark, 2022 WL 2905356, at *1.

Courts have addressed the certification process for collective actions under § 216(b) in two stages. See Campbell v. City of Los Angeles, 903 F.3d 1090, 1108-10 (9th Cir. 2018);

---

[2] Although Barber also brought New Hampshire law claims as a putative class action under Federal Rule of Civil Procedure 23, he explicitly excludes those claims from his motion for conditional certification. See doc. no. 18 at 10-11 n.4. Therefore, the court does not address class certification under Rule 23 in this order.

Moreau v. Medicus HealthCare Solutions, LLC, No. 20-cv-1107-JD, 2021 WL 919869, at *1 (D.N.H. Mar. 10, 2021) (citing cases). The first stage, preliminary or conditional certification, which is at issue here, allows "the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013). The court's consideration of conditional certification "entails a lenient review of the pleadings, declarations, or other limited evidence . . . to assess whether the proposed members of a collective are similar enough to receive notice of the pending action." Waters v. Day & Zimmermann NPS, Inc., 23 F.4th 84, 89 (1st Cir. 2022) (quotation omitted).

"Later, when discovery is complete, an employer may move to decertify the collective action. This is the 'second' stage, and the court must then make a factual determination as to whether there are similarly-situated employees who have opted in." Camp v. Bimbo Bakeries USA, Inc., No. 18-cv-378-SM, 2019 WL 440567, at *2 (D.N.H. Feb. 4, 2019). At this second stage, the court considers the "factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." Id. "If the court finds then that employees are not

3

'similarly situated,' it will decertify the class and dismiss the opt-in plaintiffs without prejudice." Id.

Such factual inquiries are specifically reserved for the second stage of the certification inquiry. Id. At the first stage, "plaintiffs bear the light burden of demonstrating that there is a reasonable basis for their claim that there are other similarly situated employees." Id. The standard is satisfied by "making a modest factual showing or asserting substantial allegations that the putative class members were together the victims of a single decision, policy, or plan that violated the law." Clark, 2022 WL 2905356, at *2 (quotation omitted). Because the standard is lenient, that determination "typically results in conditional certification." Id.

## Background

Bauer makes and sells ice hockey equipment. Barber worked at Bauer as part of the Elite Athlete Services ("EAS") team from the summer of 2016 until February 24, 2021. Beginning on April 13, 2020, Bauer put Barber and other employees, including other members of the EAS team, on furlough without pay because of the COVID-19 pandemic. Management, supervisory employees, and team members who were not furloughed continued to operate Bauer.

Bauer continued to provide the furloughed employees with benefits and cellphone service during that period. Bauer

4

restricted the furloughed employees from using their Bauer emails and Bauer electronic systems, except their cellphones. However, Barber alleges that Bauer instructed the furloughed employees to back up their business contacts on their cellphones to allow them to continue to work and to communicate with athletes and teams on Bauer's behalf. Barber also alleges that management and supervisory employees contacted him and directed him to complete work during the furlough period, without compensation.

In addition, Barber claims that other furloughed employees told him they were doing work for Bauer while they were furloughed. For example, one employee purportedly told Barber that he was fielding a number of work-related inquiries during the furlough. Another employee said that Bauer's marketing director asked him to do a skate fitting for a Bauer athlete while the employee was furloughed, and that the marketing director assured him that completing work for Bauer during the furlough would not present any issues.

## Discussion

Barber contends that Bauer violated the FLSA by not compensating him and other similarly situated furloughed employees. He moves for conditional certification of a collective, defined as follows:

5

> All individuals who were employed by Bauer Hockey, LLC
> furloughed beginning on or about April 13, 2020
> through on or about June 8, 2020 and did not receive
> minimum wage for all work completed for Bauer's
> benefit, and who elect to join this action pursuant to
> 29 U.S.C. § 216(b).

Doc. no. 18 at 2. He also asks that the court permit him to send notice, as provided in an exhibit attached to his motion (doc. no. 18-1), to potential plaintiffs, and seeks approval of the proposed opt-in form for potential plaintiffs (doc. no. 18-2).

Bauer objects to conditional certification of the proposed collective. In support, it contends that Barber has not shown that Bauer had a common practice to have furloughed employees work without compensation. Bauer contends that Barber has not identified similarly situated employees or those who are willing to join the action and has not shown that Bauer subjected the proposed collective to a common decision, plan, or policy.

I. Conditional Certification

Before the court considers whether Barber has met the necessary burden for conditional certification of the collective, it must address the parties' apparent disagreement over the requested collective's definition. As mentioned above, Barber seeks certification of the following collective:

> All individuals who were employed by Bauer Hockey, LLC
> furloughed beginning on or about April 13, 2020
> through on or about June 8, 2020 and did not receive
> minimum wage for all work completed for Bauer's

6

>benefit, and who elect to join this action pursuant to 29 U.S.C. § 216(b).

In arguing against certification of the collective, Bauer consistently describes the proposed collective as consisting of (at most) only eight Bauer employees, all of whom are or were members of the EAS team. See doc. no. 20-1 at 6 ("By Plaintiff's own definition, the proposed FLSA Class consists of only eight (8) employees . . . ."); id. at 20 ("Barber's request to send notice to the eight (8) Putative Class Members should be denied.").

As Barber notes, Bauer admits in its answer that it furloughed employees who were not a part of the EAS team. Doc. no. 21 at 11 n.9 (citing doc. no. 4, ¶ 26). Barber's definition of the proposed collective, by its plain language, is not limited to EAS team members. Instead, it encompasses any Bauer employee who performed work while furloughed during the relevant period. Therefore, the court will consider whether Barber has made the necessary showing as to all Bauer employees who otherwise fit the proposed collective as defined.[3]

---

[3] To the extent Bauer's argument is based on the notion that only EAS team members were furloughed during the relevant period, the veracity of that contention will be revealed through discovery.

7

B.   Barber's Showing

Barber's declaration in support of his motion for conditional certification provides an outline of the team structure at Bauer and details about his work as a member of the EAS team. Barber states that during the furlough, management and supervisory employees at Bauer knew that he completed work for Bauer and sent him text messages on his Bauer cellphone that directed or caused him to continue to do work. Barber also asserts that he has received information from other furloughed EAS team members that they were directed by managers and supervisors to work during the furlough period and provides specific examples in support of those allegations.

Bauer contends in response that Barber's statements in his declaration are insufficient to support conditional certification. Instead, Bauer contends that Barber is required to provide "concrete 'evidence that the legal claims and factual characteristics of the class . . . are similar.'" Doc. no. 20-1 at 10 (quoting Trezvant v. Fidelity Employer Servs. Corp., 434 F. Supp. 2d 40, 44 (D. Mass. 2006)). It further argues that conditional certification is inappropriate because the court would need to engage in a "class member-specific fact finding" and "conduct a highly individualized assessment of each Putative Class Member's furlough experience to determine whether in fact any Putative Class Members are similarly situated." Doc. no. 20-

8

1 at 17. For those reasons, Bauer asserts that Barber has not made the necessary showing for conditional certification.

Bauer overstates the burden that plaintiffs bear when seeking conditional certification of a collective. Trezvant does not, as Bauer asserts, require "concrete" evidence of similarity at this stage. Instead, consistent with other courts in the First Circuit, Trezvant requires only "some evidence." 434 F. Supp. 2d at 44.

Barber has met his burden at this early stage. He alleges that he and other furloughed Bauer employees worked with Bauer's knowledge and that Bauer managers and supervisors directed the employees to work during the furlough period. He also alleges that this work was done without pay. He has supported those allegations in the form of his sworn declaration.[4]

Moreover, Bauer's argument that certification is inappropriate because it requires an excessive and inappropriate individualized assessment of potential members of the collective is misplaced. The proposed collective includes Bauer employees

---

[4] Bauer argues that the court should not consider Barber's declaration because it includes "rank hearsay," which presumably refers to the information other employees provided to Barber. Doc. no. 20-1 at 12-13. The court need not resolve that issue at the preliminary certification stage because the evidentiary standards applicable to the evidence in support of summary judgment do not apply here and to apply them would defeat the purpose of the two-step certification process. See, e.g., Gorie v. Amazon.com Servs., LLC, No. 20-CV-01387, 2021 WL 4304281, at *3 (N.D. Ohio Sept. 22, 2021).

who: 1) were furloughed for roughly a four-month period in 2020 and 2) performed work for Bauer's benefit without being paid while on furlough. The court disagrees that conditional certification of that collective requires the type of detailed, member-specific analysis that Bauer claims is necessary. See, e.g., Camp, 2019 WL 440567, at *4; O'Connor v. Oakhurst Dairy, No. 2:14-CV-00192-NT, 2015 WL 2452678, at *3 (D. Me. May 22, 2015). That is especially the case here, where Bauer has provided little to no discovery regarding potential collective members.

Bauer raises additional arguments against certification, including that Barber failed to solicit other employees to join this suit before seeking to certify the collective action. As the court noted in Camp, whether a plaintiff seeking conditional certification is required first to identify additional individuals who are interested in joining the action "is an issue on which there is substantial debate, even among district courts in this circuit." 2019 WL 440567, at *3 (comparing cases). The court in Camp stated that, on "balance, the court agrees that it is premature to require plaintiffs to demonstrate, before notice is given, that there are other potential members of the collective who are interested in participating in this litigation." Id. The court agrees that, in light of a plaintiff's "light" burden at this stage of the

10

litigation, Barber was not required to recruit collective members prior to conditional certification.

In addition, Bauer argues that Barber cannot establish that members of the proposed collective were subject to a common unlawful policy or practice because there is no dispute that the FLSA permits employers to furlough employees on a temporary basis. In other words, Bauer contends that because it lawfully furloughed employees, it had no unlawful policy or practice. That argument misses the mark. Barber's complaint does not challenge the legality of Bauer's actions in furloughing certain employees. Instead, it alleges that Bauer knew or should have known that furloughed employees were completing work for Bauer's benefit during that time without being compensated. Thus, Bauer's argument that Barber failed to allege that members of the proposed collective were subject to a common unlawful policy or practice because the FLSA permits furloughs is a red herring.

Bauer also contends that there is no collective to be certified because other furloughed Bauer employees waived their rights to pursue FLSA claims. Specifically, Bauer asserts that a month after Barber filed this case, the EAS team employees who were furloughed signed, at Bauer's request, a waiver of rights under the FLSA and a release in favor of Bauer with respect to

11

the claims asserted in this action in return for a lump sum payment. Doc. no. 20-1 at 19; Doc. no. 20-4, ¶¶ 19 & 20. However, waiver and release of rights under the FLSA by employees has long been disfavored. Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981). Thus, the court declines, at this early stage, to conclude that other furloughed Bauer employees are precluded from joining a § 216(b) collective action because of the waivers and releases they signed.[5]

At this preliminary stage, Barber has sufficiently made the required showing that there are other similarly situated Bauer employees to support conditional certification. Specifically, he has alleged and provided some evidence of a common plan or policy by Bauer to permit or require furloughed employees, including Barber, to work without pay with managers' or supervisors' knowledge or direction. Bauer's arguments to the contrary, which largely focus on factual issues that it contends should preclude certification, are better addressed in the second stage of the litigation after discovery has taken place and if and when Bauer moves to decertify the collective.

---

[5] Further, Barber states only that other EAS team members waived their rights under the FLSA. As discussed above, the proposed collective is not limited to EAS team members and, therefore, Bauer's argument is inapposite in any event.

II. Notice

With the issue of conditional certification decided, there remain the issues of the scope of the collective and the content of the notice.

A. Scope of the Collective

As discussed above, Barber asks the court to approve notice to the collective defined as:

> All individuals who were employed by Bauer Hockey, LLC furloughed beginning on or about April 13, 2020 through on or about June 8, 2020 and did not receive minimum wage for all work completed for Bauer's benefit, and who elect to join this action pursuant to 29 U.S.C. § 216(b).

In addition to arguing that the collective is or should be limited to EAS team members, an argument that the court has addressed above, Bauer argues that the collective should be confined to employees who were or are located in the United States. In support, it contends that the court lacks jurisdiction over Bauer's Canadian employees.

Bauer's jurisdictional argument is "seemingly non-frivolous." Camp, 2019 WL 440567, at *4 n.2. But such a jurisdictional "issue requires additional briefing from the parties and can be addressed by the court once a proper notice has been issued and all potential members of the collective have been identified." Id. Therefore, the collective defined by

13

Barber, pertaining to all Bauer employees who worked during the furlough period without pay, will receive notice.

In order to send notice to potential collective plaintiffs, Barber asks the court to order Bauer to identify all potential members of the defined collective within 15 days of the date of this order, with their names, mailing addresses, email addresses, telephone numbers, work locations, and dates of employment. Barber proposes to send notice and the opt-in form by mail, email, and text message; to give the potential collective members 90 days from receipt of the notice to return the opt-in form; and to send a reminder by the same means as notice after 45 days.

Bauer objects to the notice Barber proposes and asks the court to order counsel to confer regarding a revised joint notice. As examples of the problems with the proposed notice, Bauer asserts that the means of notice should not include text messages absent a compelling reason, that a third-party administrator should be appointed to avoid giving Barber's counsel "unfettered" access to Bauer's employees' contact information, that the notice period is too long and should not include a reminder, and that the notice improperly fails to notify prospective collective members that they could be liable for the costs of the case. Barber filed a reply but did not respond to Bauer's objections to the proposed notice.

14

Some of the issues Bauer raises regarding Barber's proposed notice have been the subject of recent decisions regarding conditional certification under § 216(b), with mixed results. For example, certain cases support notice by text message because of the mobility of today's society. See, e.g., Njoroge v. Primacare Partners, LLC, No. 22-0425-BAH, 2022 WL 4465894, at *7 (D. Md. Sept. 26, 2022). Others, however, require a showing that regular mail and email have not been effective before allowing notice by text message. See, e.g., Cates v. Alliance Coal, LLC, No. 21-CV-377-SMY, 2022 WL 4485477, at *3 (S.D. Ill. Sept. 27, 2022) Further, although a 90-day timeframe for potential collective members to respond is common, see, e.g., Washington v. Freedom of Expression LLC, No. CV-21-01318-PHX-MTL, 2022 WL 4615033, at *4 (D. Ariz. Sep. 30, 2022), some courts have ordered less time, see, e.g., Cates, 2022 WL 4485477, at *3 (allowing 60 days for potential collective members to respond to notice despite the plaintiff's request for 90 days). Similarly, courts have allowed reminders in some cases but not in others. Wells v. Cmty. Health Sys., Inc., No. 3:21-CV-00865, 2022 WL 4377116, at *6 (M.D. Tenn. Sept. 22, 2022) (noting that "district courts . . . across the country are split as to whether reminder notices to potential class members are proper in FLSA actions" (quotation and alteration omitted)).

Other issues that Bauer raises with the proposed notice appear to have merit or require the parties to confer. For example, in FLSA actions, courts generally have required, as Bauer requests, that notice to opt-in plaintiffs include information that they could share liability for costs if the defendant prevails in the case. See, e.g., Spencer v. DMD Mgt., Inc., No. 1:21CV1698, 2022 WL 2734387, at *4 (N.D. Ohio July 14, 2022). In addition, courts have allowed a third-party administrator when the parties agree that procedure is necessary. Chapman v. Saber Healthcare Grp., LLC, No. 2:20CV106, 2022 WL 3686477, at *12 (E.D. Va. Aug. 25, 2022); Njoroge, 2022 WL 4465894, at *7; Davine v. Golub Corp., No. 14-30136-MGM, 2015 WL 12966278, at *1 (D. Mass. June 11, 2015). Thus, Bauer is free to seek Barber's consent to have a third-party administrator gather the contact information and disseminate the notices in this case. However, because a protective order would likely accommodate Bauer's concerns about confidentiality of contact information, Bauer has not yet shown that a third-party administrator is required.

In light of the issues Bauer raises, the parties shall confer about the notice procedure and attempt to reach a joint proposal. If the parties are unable to reach a joint proposal, despite their best good faith efforts to do so, they shall file separate notice proposals, with citations to authority

16

supporting the provisions they request. The court will then issue an order for notice.

## Conclusion

For the foregoing reasons, the plaintiff's motion for conditional certification of a collective action pursuant to § 216(b) (document no. 18) is granted, with the exception of the requested notice procedure.

The following collective is conditionally certified:

All individuals who were employed by Bauer Hockey, LLC furloughed beginning on or about April 13, 2020 through on or about June 8, 2020 and did not receive minimum wage for all work completed for Bauer's benefit, and who elect to join this action pursuant to 29 U.S.C. § 216(b).

The parties shall confer about the notice to be provided to the conditionally certified collective. On or before **November 8, 2022**, counsel shall file a joint proposed notice to the collective, or if necessary, separate proposed notices, as is provided above.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

October 18, 2022

cc: Counsel of record